UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
JOHN DOE,                                             :
                                                      :            25-CV-5724 (JHR) (RWL)
                              Plaintiff,              :
                                                      :         **DECISION AND ORDER:**
              - against -                             :      **(1) MOTION TO REMAND (Dkt. 7);**
                                                      :      **(2) MOTION TO PROCEED UNDER**
JAMES P. EHRHARD, ESQ., individually and             :           **PSEUDONYM (Dkt. 18)**
as partner of, EHRHARD & ASSOCIATES,                 :
P.C.,                                                 :      **REPORT AND RECOMMENDATION**
                                                      :      **TO HON. JENNIFER H. REARDEN:**
                              Defendant.              :        **MOTION TO DISMISS (Dkt. 23)**
                                                      :
-------------------------------------------------------------X

**ROBERT W. LEHRBURGER, United States Magistrate Judge.**

Plaintiff, proceeding pro se, filed this action in New York State court seeking damages in the amount of $750,000, alleging that Defendant James P. Ehrhard, an attorney, improperly disclosed confidential details about a New York State Division of Human Rights complaint in a bankruptcy action filed in Massachusetts. Defendant removed the case to federal court on the basis of diversity jurisdiction. Three motions currently are pending: (1) Plaintiff's motion to remand; (2) Plaintiff's motion to proceed under a pseudonym; and (3) Defendant's motion to dismiss for lack of personal jurisdiction or, alternatively, for improper venue. The case has been referred to me for general pretrial proceedings and for report and recommendation on dispositive motions. For the following reasons, the Court denies Plaintiff's motions to remand and proceed under a pseudonym, and recommends granting Defendant's motion to dismiss for lack of personal jurisdiction.

1

## Factual and Procedural Background

### A.    The Parties

Plaintiff is a physician and expert witness who resides in Bronx County, New York, and is a citizen of New York state.  (Dkt. 2-1 ¶¶ 6-7; Dkt. 26 ¶ 10.)  Plaintiff also is a named creditor in a bankruptcy case, and a plaintiff in an associated adversary proceeding, both pending in United States Bankruptcy Court for the District of Massachusetts.  (Dkt. 21 ¶ 1; Dkt. 26 ¶ 16 and Ex. C.)  Defendant is a citizen and resident of Massachusetts and operates his one-office law firm, Ehrhard & Associates, P.C., in Worcester, Massachusetts.  (Dkt. 2-1 ¶ 8; Dkt. 26 ¶¶ 11, 13-14.)  Defendant represents the debtor in the Massachusetts bankruptcy proceedings.  (*See* Dkt. 26-3 at ECF 2, 16.)

### B.    Plaintiff's Complaint

On or about June 12, 2025, Plaintiff filed an action in New York Supreme Court of Bronx County.  (Dkt. 2-1.)  In his verified complaint, Plaintiff alleges that he is the subject of a confidential ongoing New York State Division of Human Rights ("DHR") complaint (the "DHR Complaint") filed by a "former contractor."  (Dkt 2-1 ¶ 9.)  He further alleges that Defendant knowingly and willfully disclosed confidential details of the DHR Complaint in the Massachusetts bankruptcy proceedings.  (Dkt. 2-1 ¶ 10.)  Those details include personal health information, allegations under investigation, and other information that should have been redacted.  (Dkt. 2-1 ¶ 11.)  Additionally, Plaintiff alleges that, in an April 17, 2025 email, Defendant "admitted to 'gossip' and collaboration with another attorney to damage Plaintiff's reputation."  (Dkt. 2-1 ¶ 12.)  As a result, Plaintiff claims he has lost referrals from attorneys, has had his credibility diminished in legal proceedings, and has had to recuse himself from several matters "due to reputational harm."  (Dkt. 2-1 ¶ 13.)

Plaintiff asserts claims for defamation per se, violation of HIPAA and privacy laws, intentional infliction of emotional distress, deceit or collusion in violation of New York Judiciary Law § 487, and breach of attorney ethics codes.  (Dkt. 2-1 ¶¶ 15-29.)  He seeks damages in the amount of $750,000, comprised of $250,000 in compensatory damages, $250,000 in reputational or consequential damages, and $250,000 in punitive damages.  (Dkt. 2-1 ¶¶ 4, 14.)

**C.    Removal And Motion To Remand**

Defendant was served with Plaintiff's verified complaint on June 24, 2025.  (Dkt. 13; Dkt. 46 ¶ 5.)  On July 11, 2025, Defendant filed a Petition for Removal in this District.  (Dkt. 2.)  That same day, Plaintiff moved to remand the case back to state court.  (Dkts. 7-9.)  On August 6, 2025, Defendant filed his opposition (Dkt. 26), and Plaintiff filed both a reply (Dkt. 31) and a supplemental reply brief (Dkt. 28).  Plaintiff then filed several more remand-related filings, including Dkts. 33 (notice of supplemental information), 36-38 (application for fees and costs in moving to remand), and 43 (another reply in further support).  Defendant filed a sur-reply on August 27, 2025.  (Dkt. 46.)

**D.    Motion To Proceed Under Pseudonym**

Plaintiff filed the instant case anonymously under the pseudonym "John Doe."  On July 24, 2025, the Court directed Plaintiff to file a motion seeking leave to proceed under a pseudonym.  (Dkt. 16.)  Plaintiff filed the motion, arguing that being named in the case would harm his professional relationships and referral sources and threaten his safety.  (Dkt. 18.)  In a declaration filed under seal, Plaintiff stated that he filed under a pseudonym to "protect sensitive medical, professional, and reputational interests."   (Dkt. 19.)  Defendant filed his opposition on August 6, 2025.  (Dkt. 25.)  Defendant contends that

Plaintiff has not demonstrated any basis to maintain his anonymity.  (*Id.*)  Plaintiff did not file a reply.

### E.    Motion To Dismiss

On July 31, 2025, Defendant moved to dismiss the case for lack of personal jurisdiction on the basis that Defendant resides and works in Massachusetts; the events about which Plaintiff complains occurred in Massachusetts; and Plaintiff has not alleged that Defendant or his firm transacts business in New York.  (Dkt. 23-8 at 6-11.) Alternatively, Defendant argues that the case should be dismissed for lack of proper venue.[1]  (*Id.* at 11-14.)  Plaintiff filed his opposition to the motion to dismiss on August 6, 2025.  (Dkt. 29.)  Rather than addressing Defendant's asserted bases for dismissal, however, Plaintiff argued that his complaint states a plausible claim for relief.  (*Id.*) Defendant replied on August 12, 2025.  (Dkt. 32.)

The Court turns to resolution of each motion, starting with remand, followed by Plaintiff's motion to proceed under a pseudonym, and ending with the motion to dismiss.

### I. Defendant Properly Removed The Case

A defendant may remove "any civil action brought in a State court of which the district courts of the United States have original jurisdiction."  28 U.S.C. § 1441.  If the basis for federal jurisdiction exists on the face of the initial pleading as filed, "[t]he notice of removal of a civil action or proceeding shall be filed within 30 days after the receipt by

---

[1] Defendant's motion to dismiss also includes an affirmative motion to remove Plaintiff's "John Doe" pseudonym, essentially reprising the arguments Defendant made in his opposition to Plaintiff's motion to proceed under a pseudonym.  (Dkt. 23-8 at 14-21.)  As the Court denies Plaintiff's motion to proceed under a pseudonym, this aspect of Defendant's motion is moot.

the defendant, through service or otherwise, of a copy of the initial pleading."  28 U.S.C. § 1446(b)(1).

One basis for original jurisdiction is where the parties are diverse – i.e., "citizens of different States" – and the amount in controversy exceeds $75,000.[2]  28 U.S.C. § 1332(a).  Determination of diversity jurisdiction is based on "the state of facts that existed at the time of filing." *Grupo Dataflux v. Atlas Global Group, L.P.*, 541 U.S. 567, 571, 124 S. Ct. 1920 (2004).  Diversity between the parties must be complete; that is, no plaintiff may be a citizen of the same state as any defendant.  *See* 28 U.S.C. § 1332; *Lincoln Property Co. v. Roche*, 546 U.S. 81, 89, 126 S. Ct. 606 (2005).  The removing party bears the burden to demonstrate that diversity is present.  *Mehlenbacher v. Akzo Nobel Salt, Inc.*, 216 F.3d 291, 296 (2d Cir. 2000); *Wilds v. United Parcel Service Inc.*, 262 F. Supp.2d 163, 171 (S.D.N.Y. 2003).

Here, Defendant has demonstrated that the requirements for diversity jurisdiction are met.  Plaintiff is a citizen of New York.  Defendant, and his law firm, are citizens of Massachusetts.  There are no other parties.  Complete diversity thus exists.  The monetary requirement also is met; Plaintiff seeks $250,000 in compensatory damages, $250,000 in "reputational and consequential damages," and $250,000 in punitive damages, for a total of $750,000 – ten times the jurisdictional threshold.  (Dkt. 2-1 ¶ 4 and Prayer For Relief.)

Plaintiff's myriad arguments in support of remand are not persuasive.  First, Plaintiff argues that the court does not have diversity jurisdiction because he seeks only

---

[2] Federal courts also have original jurisdiction over disputes arising under federal law pursuant to 28 U.S.C. § 1331.  There is no basis for such subject matter jurisdiction here because all of Plaintiff's claims are based on state law.

injunctive, not monetary relief. (Dkt. 9 at 1.) That simply is not so. His complaint expressly seeks $750,000 in damages for compensatory harm, reputational harm, and punitive damages.

Second, Plaintiff asserts that he brought the state action as a special proceeding pursuant to Article 4 of New York's Civil Procedure Law and Rules ("CPLR") and that such a proceeding cannot or should not be removed. In support of that argument, Plaintiff describes Article 4 as "a form unique to New York jurisprudence used to seek prompt equitable relief." (Dkt. 9 at 1.) But, again, Plaintiff's complaint seeks compensatory and monetary relief, not equitable relief. Other aspects of Plaintiff's state court filing also show that his action is a plenary action, not an Article 4 special proceeding. Article 4 requires the parties to be styled as "petitioner" and "respondent." CPLR § 401. The pleading Plaintiff filed in state court, however, styles the parties as "Plaintiff" and "Defendant." (Dkt. 2-1 at 1.) Likewise, an Article 4 proceeding is initiated by a "Petition," not, as here, a verified complaint. CPRL § 402. An Article 4 proceeding is brought on by an order to show cause or notice and is accompanied by affidavits. CPLR § 403. Nothing submitted by the parties suggests that Plaintiff did either.

Regardless, even if Plaintiff did bring his action as an Article 4 special proceeding, he has not presented any authority that precludes removal of the case. Some special proceedings may be removed; others may not. Courts recognize that special proceedings may be removable when they are not merely ancillary to an existing state action. *Compare Diack v. Navien, Inc.*, No. 22-CV-164, 2022 WL 2467645, at *3 (E.D.N.Y. Feb. 5, 2022) (rejecting as "easily dispelled" the argument that special proceeding pursuant to Article 75 to enforce arbitration award was not removable) *with High Speed Capital, LLC*

*v. Corporate Debt Advisors, LLC*, 339 F. Supp.3d 137, 143 (W.D.N.Y. 2018) (holding that special proceedings pursuant to CPLR §§ 5225(b) and 5227 to collect on judgment obtained in state court were ancillary and not subject to removal). The complaint at issue here is not ancillary to some other state proceeding; rather, it is the pleading that initiated the action.

The Second Circuit has held that a special proceeding under CPLR § 3102(c) cannot be removed. *Teamsters Local 404 Health Services & Insurance Plan v. King Pharmaceuticals, Inc.*, 906 F.3d 260, 267 (2d Cir. 2018). That provision allows a petitioner to initiate a special proceeding, before commencing a plenary action on the merits, to obtain disclosure "to aid in bringing an action, to preserve information or to aid in arbitration." CPLR § 3102(c). Here, although Plaintiff alludes to special proceedings to obtain pre-suit discovery (Dkt. 31 at 2),[3] his verified complaint is not anything of the sort. The complaint is fully formed and devoid of any reference to the need for pre-action discovery. Plaintiff has not filed anything from the state court action showing that he merely sought pre-suit discovery in aid of bringing an action.

Third, Plaintiff invokes the forum-defendant rule (Dkt. 38 at 3), which forecloses removal on the basis of diversity jurisdiction when a defendant who is a citizen of the

---

[3] Across two separate filings, Plaintiff cites four cases concerning § 3102(c) and pre-action disclosure. (Dkts. 28 at 2, 31 at 2.) For three of those cases, Plaintiff provides Westlaw citations. For the fourth, he provides a New York Appellate Division cite. The Court was not able to locate any of the cited decisions, however, and suspects the citations may well be the product of AI hallucinations. Plaintiff is cautioned that he will be sanctioned if in the future he cites any "cases" that are the product of AI hallucinations or otherwise do not exist. *See Romero v. Goldman Sachs Bank USA*, No. 25-CV-2857, 2025 WL 1916119, at *2 (S.D.N.Y. June 25, 2025) (explaining that "[t]he presentation of false citations, quotations, and holdings by a party or their counsel to the Court is sanctionable conduct").

forum state has already been served with the state court complaint.   28 U.S.C. § 1441(b)(2);  *Gibbons v. Bristol-Myers Squibb Co.*, 919 F.3d 699, 704-05 (2019). Defendant, however, is not a citizen of New York.  Accordingly, the forum-defendant rule does not apply.

Fourth, Plaintiff maintains that removal was improper because Defendant removed the case before being served with the complaint.  (Dkt. 9 at 2.)  That argument has no merit.  Defendant in fact was served prior to removal, as Plaintiff's own notice and proof of service demonstrates.  (Dkt. 13 at 2 (attesting to personal service on June 24, 2025).) And, even if Defendant had not already been served, removal would still have been permitted.  Service starts the clock on the time to file for removal, and it establishes the divide for application of the forum-defendant rule.  But a defendant is allowed to remove before service has been completed.  *See Gibbons*, 919 F.3d at 705.

Fifth, Plaintiff argues that the Bronx is the appropriate forum for the dispute.  (Dkt. 9 at 2.)  Whether that is so or not is irrelevant.  Venue is a different issue than removal. In any event, the Southern District of New York includes the Bronx.

Sixth, Plaintiff contends that Defendant's opposition to the remand motion should be rejected because it was not timely filed.  (Dkt. 28 at 1; Dkt. 31 at 1; Dkt. 38 at 1.) Plaintiff filed his motion on July 11, 2025.  (Dkt. 7.)  Under rule 6.1 of the Local Rules for the Southern District of New York, responses to non-discovery motions are due 14 days after the motion is filed, unless otherwise directed by the Court.  Defendant did not file a response within 14 days.  The Court, however, extended Defendant's time to respond to August 6, 2025, by order to show cause.  (Dkt. 22 (requiring Defendant to "show good

cause in writing why Plaintiff's motion should not be deemed unopposed").)  Defendant met that deadline by filing his opposition.[4]

Seventh, Plaintiff asserts that removal is defective because not all defendants have consented to removal as required under 28 U.S.C. § 1446(b)(2)(A).  (Dkt. 38 at 2.)  *See Taylor v. Medtronic, Inc.*, 15 F.4th 148, 150 (2d Cir. 2021) (explaining the unanimity rule). This is another frivolous argument.  Defendant filed for removal in both capacities in which Plaintiff has named him.  There are no other defendants, and Plaintiff has not identified any.

Eighth, Plaintiff suggests that the case should be remanded because, if it remains in federal court, the time for Defendant to disclose any applicable insurance policy "could be many months later."  (Dkt. 33 at 2.)  Aside from being speculative, the timing of such disclosure is immaterial.

Ninth, Plaintiff accuses Defendant of removing the case as an improper effort to "derail" his pending motion in state court to proceed under a pseudonym.  (Dkt. 38 at 2.) That argument does not hold up; a plaintiff may move to proceed under a pseudonym in federal court, which is exactly what Plaintiff has done.

Finally, Plaintiff invokes his pro se status, his diligence, and his being a victim of harmful conduct.  (Dkt. 28 at 3.)  None of those, however, change the propriety of removal. Defendant's removal of the case was entirely proper, and there is no basis for remand. The motion to remand is denied.  For the same reasons, Plaintiff's application for fees and costs in connection with removal and remand is also denied.

---

[4] Plaintiff characterizes Defendant's timing as "tactical delay."  (Dkt. 28 at 1.)  The Court fails to see that the 12-day period between July 25, 2025 and August 6, 2025, provided Defendant with any tactical advantage in opposing Plaintiff's motion or otherwise.

## II. Proceeding Under A Pseudonym Is Not Warranted

"Federal court proceedings and records presumptively are public absent a showing of exceptional circumstances." *Rapp v. Fowler*, 537 F. Supp.3d 521, 526 (S.D.N.Y. 2021). The Federal Rules of Civil Procedure thus direct that "[t]he title of [a] complaint must name all the parties." Fed. R. Civ. P. 10(a). "This rule 'serves the vital purpose of facilitating public scrutiny of judicial proceedings and therefore cannot be set aside lightly.'" *Doe v. Combs*, No. 24-CV-8810, 2025 WL 268515, at *1 (S.D.N.Y. Jan. 22, 2025) (quoting *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 188-89 (2d Cir. 2008)). An exception may be made "only where the litigant seeking to proceed anonymously has a substantial privacy interest that outweighs any prejudice to the opposing party and 'the customary and constitutionally-embedded presumption of openness in judicial proceedings.'" *Rapp*, 537 F. Supp.3d at 526-27 (quoting *Sealed Plaintiff*, 537 F.3d at 189).

"The Second Circuit has identified a 'non-exhaustive' list of factors to assist district courts in balancing these interests. A district court is 'not required to list each of the factors or use any particular formulation as long as it is clear that the court balanced the interests at stake in reaching its conclusion.' The ten factors are:

(1)    whether the litigation involves matters that are highly sensitive and of a personal nature,

(2)    whether identification poses a risk of retaliatory physical or mental harm to the party seeking to proceed anonymously or even more critically, to innocent non-parties,

(3)    whether identification presents other harms and the likely severity of those harms, including whether the injury litigated against would be incurred as a result of the disclosure of the plaintiff's identity,

(4)    whether the plaintiff is particularly vulnerable to the possible harms of disclosure, particularly in light of his age,

(5)    whether the suit is challenging the actions of the government or that of private parties,

(6)    whether the defendant is prejudiced by allowing the plaintiff to press his claims anonymously, whether the nature of that prejudice (if any) differs at any particular stage of the litigation, and whether any prejudice can be mitigated by the district court,

(7)    whether the plaintiff's identity has thus far been kept confidential,

(8)    whether the public's interest in the litigation is furthered by requiring the plaintiff to disclose his identity,

(9)    whether, because of the purely legal nature of the issues presented or otherwise, there is an atypically weak public interest in knowing the litigants' identities, and

(10)    whether there are any alternative mechanisms for protecting the confidentiality of the plaintiff."

*Combs*, 2025 WL 268515, at *1-2 (quoting *Sealed Plaintiff*, 537 F.3d at 189-91 & n.4).

Before addressing the specific factors, there is one fact that is dispositive of Plaintiff's motion:  in addition to identifying himself as a doctor, he has also already voluntarily disclosed his last name in this action.  *See Doe v. Skyline Automobiles Inc.*, 375 F. Supp.3d 401, 407 (S.D.N.Y. 2019) (observing "courts have indicated that if the identity of a plaintiff was previously disclosed …, then the request to proceed anonymously should be denied").  Specifically, in a notice of related litigation, Plaintiff identifies the caption – including his last name – of the Massachusetts adversary proceeding in which he is plaintiff.  (Dkt. 21 ¶ 1 (disclosing that Plaintiff is the "plaintiff in the associated adversary proceeding, *Johar v. Randev*, Adv. No. 24-04036").)

Even without that disclosure, all of the factors either weigh against preserving Plaintiff's anonymity or are neutral.  None separately or together warrant allowing Plaintiff

to proceed under a pseudonym. To be sure, the DHR Complaint against Plaintiff is personal and sensitive to him, considerations that comprise the first factor. The Court has reviewed a redacted copy of the DHR Complaint. (*See* Dkt. 23-7 at ECF 23-52.) Some of the allegations, if true, theoretically could prove embarrassing and injurious to Plaintiff's reputation. But embarrassment and reputational harm typically do not suffice to warrant proceeding under a pseudonym. *See Doe v. Trustees of Columbia University in the City of New York*, No. 21-CV-1697, 2021 WL 1253974, at *3 (S.D.N.Y. Apr. 1, 2021) ("Although Plaintiff divulges personal details in his complaint and alleges that publicly litigating this matter is embarrassing, uncomfortable, and likely to damage his employment prospects, courts routinely reject such allegations as insufficient"); *Doe I v. Individuals*, 561 F. Supp.2d 249, 257 (D. Conn. 2008) ("these harms are not the special harms required in order to proceed anonymously, but rather social stigma, embarrassment, and economic harm, none of which are grounds for proceeding anonymously").

Plaintiff cites *Doe v Del Rio*, 241 F.R.D. 154, 159 (S.D.N.Y. 2006) for the proposition that courts routinely grant pseudonym status to prevent unnecessary exposure of private medical details. (*See* Dkt. 18 at 2.) That case does not help Plaintiff. In *Del Rio*, a husband and wife sued police officers for assault of the husband and sexual abuse of the wife. Rather than permitting plaintiffs to proceed anonymously, the court granted the defendant's motion to have their names unmasked. The court concluded that while the "complaint concern[s] events that anyone would prefer to keep private, and … there is evidence that Jane Doe has been psychologically harmed by those events, the nature of the charged acts, repulsive as they are, is not so extreme as to support

sufficiently an interest in anonymity." *Del Rio*, 241 F.R.D. at 162. *Del Rio* underscores the high threshold of privacy and sensitivity a party needs to demonstrate to proceed anonymously. Plaintiff does not clear that threshold.

The second, third, and fourth factors also do not favor Plaintiff. He has not identified how naming him as the plaintiff in this case poses a risk of any retaliatory conduct, whether physical or mental to either him or innocent non-parties. Plaintiff nevertheless asserts that identification poses risk of harm to his reputation and livelihood as a licensed physician and medical expert. (Dkt. 18 at 2.) In particular, he contends that "[p]ublic association with this litigation – especially given its focus on alleged ***legal*** misconduct and retaliatory abuse of court process – would immediately impair professional relationships, referral sources, and safety." (*Id.* (emphasis added).) Plaintiff does not explain why that is so. To the extent allegations of "legal misconduct and retaliatory abuse of court process" concern anyone's reputation, it is more likely to be Defendant as the attorney whom Plaintiff accuses of misconduct.

The more logical basis underpinning Plaintiff's concern for his reputation and business prospects is the gravamen of his complaint – disclosure of information from the DHR Complaint in the Massachusetts bankruptcy proceeding. But even that interest does not warrant proceeding anonymously as noted above. *See Trustees of Columbia University*, 2021 WL 1253974, at *3; *Individuals*, 561 F. Supp.2d at 257. Nor has Plaintiff suggested that the DHR Complaint or the alleged confidential information submitted in the bankruptcy proceeding has been withdrawn from the public record. Inasmuch as the information already has been exposed in that legal proceeding, there is nothing to protect in this legal proceeding. And even if the information has been withdrawn or sealed in the

bankruptcy proceeding, Plaintiff's identity in this case is readily accessible to the public. In his verified complaint, Plaintiff disclosed the Massachusetts adversary proceeding in which the DHR Complaint was submitted and even identified the specific docket entry. (Dkt. 2-1 ¶ 10 (identifying Adversary Proceeding 24-04036-CJP and the docket number at which the DHR Complaint was disclosed); *see also* Dkt. 21 ¶ 1 (Plaintiff's notice of "related litigation" disclosing case numbers and captions of the bankruptcy and adversary proceedings).)  One need only look up the docket on PACER to determine Plaintiff's full name.  (*See* Dkt. 23-5 at ECF 16.)  The seventh factor thus weighs against granting Plaintiff's motion.

The fifth factor too weighs against Plaintiff.  "Courts are less inclined to grant a motion to proceed under a pseudonym when the suit involves only private parties."  *Doe v. Weinstein*, 484 F. Supp. 3d 90, 96 (S.D.N.Y. 2020).  That is the case here.  Plaintiff and defendant are private parties.

The extent to which Defendant is prejudiced by allowing Plaintiff to press his claims anonymously – the sixth factor – tilts in Defendant's favor.  Although, as Plaintiff notes (Dkt. 18 at 3), Defendant is aware of Plaintiff's identity, that alone does not eliminate prejudice.  *See Michael v. Bloomberg L.P.*, 14-CV-2657, 2015 WL 585592, at *4 (S.D.N.Y. Feb. 11, 2015) (denying motion to proceed under a pseudonym where the plaintiff "ha[d] offered to disclose his true identity to [the defendant], as long as it remain[ed] under seal").  In pre-suit communications, Plaintiff intimated that Defendant may want to keep his partners "in the loop – especially where reputational risk and exposure are concerned." (Dkt. 23-6 at ECF 4.)  Allowing Plaintiff to remain anonymous, would afford him the undue benefit of being able to threaten Defendant and his firm's reputation while shielding his

own.  Additionally, Plaintiff's anonymity provides a potential unfair advantage to him by limiting Defendant's ability to investigate and defend the case.  *See Del Rio*, 241 F.R.D. at 159 (recognizing that "[c]ourts have expressed concern that maintaining a plaintiff's anonymity could unfairly impede defendant's ability to impeach the plaintiffs' credibility"; "deprive a litigant and the court of the chance that a yet unknown witness would … know to step forward"; and that "information about only one side may thus come to light") (internal quotation marks omitted).

The seventh factor addresses whether Plaintiff's identity has thus far been kept confidential.  In the instant litigation, it has not.  Although Plaintiff filed the case using a pseudonym, he made his identity readily accessible to the public from the start by having disclosed in his complaint the case number of the Massachusetts adversary proceeding in which he is the named plaintiff.  (Dkt. 2-1 ¶ 10.)  He then expressly made his last name known by disclosing it in his notice of related litigation.[5]  (Dkt. 21.)  The seventh factor thus weighs against granting Plaintiff's motion.

The eighth and ninth factors, which focus on the public interest, also weigh against proceeding under a pseudonym.  Naming Plaintiff is consistent with the strong public interest in open judicial proceedings; Plaintiff's allegations are far from "purely legal" in nature; and there is nothing that makes the instant case one where there is an "atypically weak" public interest.  *See New Jersey Media Group Inc. v. Doe*, No. 12-CV-6152, 2012 WL 5899331, at *8 (S.D.N.Y. Nov. 26, 2012) ("open proceedings ... benefit the public as

---

[5] Defendant repeatedly asserts that the DHR Complaint is available to the public through a freedom of information law request.  (*E.g.*, Dkt. 25 at 2, 3, 16.)  Defendant has not, however, provided any authority to confirm that assertion or that the DHR Complaint, even if obtainable through a freedom of information law request, would not be redacted when released.  Accordingly, the Court does not rely on this aspect of Defendant's argument.

well as the parties and also serve the judicial interest in accurate fact-finding and fair adjudication"); *Doe v. Shakur*, 164 F.R.D. 359, 361 (S.D.N.Y. 1996) ("lawsuits are public events and the public has a legitimate interest in knowing the facts involved in them. Among those facts is the identity of the parties") (internal quotation marks and citations omitted).

Finally, there are alternative means to address Plaintiff's confidentiality concerns. The Court can enter a protective order governing disclosure of confidential information. Details of the DHR Complaint may potentially warrant protection, but allowing Plaintiff to proceed under a pseudonym would be unnecessarily broad. *See Weinstein*, 484 F. Supp.3d at 98 ("Plaintiff can seek less drastic remedies than blanket anonymity, such as redactions to protect particularly sensitive information").

The Court finds that the balance of interests strongly weighs against granting Plaintiff's motion to proceed under a pseudonym. "The fundamental question is whether Plaintiff has a 'substantial privacy' interest that 'outweighs the customary and constitutionally-embedded presumption of openness in judicial proceedings.'" *Id.* (quoting *Sealed Plaintiff*, 537 F.3d at 189). He does not. Accordingly, Plaintiff's motion to proceed under a pseudonym is denied.

### III. The Court Lacks Personal Jurisdiction Over Defendant

Defendant's motion seeks dismissal of the complaint based on lack of personal jurisdiction. Plaintiff's opposing brief does not respond to Defendant's arguments, instead addressing the purported merits of his claims. (*See* Dkt. 29.) Nonetheless, the Court will conduct a fulsome analysis.

The Court must dismiss if it does not have personal jurisdiction over the Defendant. *See* Fed. R. Civ. P. 12(b)(2).  To determine whether the court may exercise personal jurisdiction (in the absence of consent), it "must conduct a two-part analysis, looking first to the state's long-arm statute and then analyzing whether jurisdiction comports with federal due process."  *Mario Valente Collezioni, Ltd. v. Confezioni Semeraro Paolo, S.R.L.*, 264 F.3d 32, 37 (2d Cir. 2001); *see also Chloe v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 163-64 (2d Cir. 2010) (describing two-step analysis for personal jurisdiction).  Plaintiff bears the burden of establishing a prima facie case that personal jurisdiction exists.  *See SPV Osus Ltd. v. UBS AG*, 882 F.3d 333, 342 (2d Cir. 2018).  The Court "constru[es] all pleadings and affidavits in the light most favorable to the plaintiff and resolv[es] all doubts in the plaintiff's favor."  *Penguin Group (USA) Inc. v. American Buddha*, 609 F.3d 30, 34 (2d Cir. 2010) ("*American Buddha I*").  But the Court "need not ... accept a legally conclusory assertion or draw 'argumentative inferences.'"  *Daventree Ltd. v. Republic of Azerbaijan*, 349 F. Supp.2d 736, 757 (S.D.N.Y. 2004).

For non-New York domiciliaries like Defendant, "[t]here are two ways that New York exercises personal jurisdiction …: general jurisdiction pursuant to [CPLR] 301 ... or specific jurisdiction pursuant to CPLR 302."  *Thackurdeen v. Duke University*, 130 F. Supp.3d 792, 798 (S.D.N.Y. 2015) (quotation marks and internal brackets omitted), *aff'd*, 660 F. App'x 43 (2d Cir. 2016) (summary order); *see generally Ford Motor Co. v. Montana Eighth Judicial District Court*, 592 U.S. 351, 358, 141 S. Ct. 1017 (2021) (the Supreme Court recognizes "two kinds of personal jurisdiction: general (sometimes called all-purpose) jurisdiction and specific (sometimes called case-linked) jurisdiction").  "General jurisdiction ... permits a court to adjudicate any cause of action against the ... defendant,

wherever arising, and whoever the plaintiff." *Brown v. Lockheed Martin Corp.*, 814 F.3d 619, 624 (2d Cir. 2016). "Specific jurisdiction is available when the cause of action sued upon arises out of the defendant's activities in a state." *Id*. Here, the Court has neither general nor specific jurisdiction over Defendant under New York's long-arm statute.

The Court does not have general jurisdiction over Defendant or his firm. "A federal court sitting in New York has general jurisdiction over an entity when its contacts within New York are so continuous and systematic as to render the corporation essentially at home in New York." *International Diamond Importers, Inc. v. Med Art, Inc.*, No. 15-CV-4045, 2017 WL 2839640, at *2 (S.D.N.Y. June 29, 2017); *accord Daimler AG v. Bauman*, 571 U.S. 117, 138-39, 134 S. Ct. 746 (2014) ("the inquiry … is not whether a foreign [entity]'s in-forum contacts can be said to be in some sense 'continuous and systematic,' it is whether that [entity]'s affiliations with the State are so continuous and systematic as to render it essentially at home in the forum State") (internal quotation marks omitted). Defendant is a resident and citizen of Massachusetts. (Dkt. 23-1 ¶ 7; Dkt. 26 ¶¶ 11, 14.) He owns and operates a firm incorporated and having its sole office in Massachusetts. (Dkt. 23-1 ¶¶ 7-8.) There is no evidence before the Court, and no allegations by Plaintiff, that Defendant conducts any business in New York, let alone continuously and systematically so, to render him or his firm at home in New York. (*See id.* ¶ 9 (attesting that Defendant's firm does not operate, own, or lease any office in New York and that Defendant earns no income in New York).)

Nor does the Court have specific jurisdiction over Defendant or his firm. New York authorizes jurisdiction over non-domiciliaries when the cause of action arises out of any of four acts:

1.    transacts any business within the state or contracts anywhere to supply goods or services in the state; or

2.    commits a tortious act within the state, except as to a cause of action for defamation of character arising from the act; or

3.    commits a tortious act without the state causing injury to person or property within the state, except as to a cause of action for defamation of character arising from the act, if he

(i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or

(ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce; or

4.    owns, uses or possesses any real property situated within the state.

CPLR § 302(a).

None of those scenarios apply here.  Plaintiff does not allege that his claims arise out of any business conducted or contracted with Defendant or in connection with any real property owned, used, or possessed by Defendant in New York.  Rather, Plaintiff's allegations of misconduct are based solely on Defendant's conduct and business in Massachusetts; namely, disclosing information in a filing on behalf of the debtor and adversary-proceeding defendant in the federal bankruptcy court in Massachusetts.  (Dkt. 2-1 ¶¶ 8, 10-14.)  CPLR 302(a)(1) and (4) thus do not apply.  Nor does Plaintiff allege that Defendant committed a tortious act in New York.  Rather, Plaintiff alleges that Defendant committed tortious conduct in Massachusetts.  CPLR 302(a)(2) thus does not apply.

That leaves CPLR 302(a)(3), which may apply when, as alleged here, the defendant commits a tortious act outside New York.  However, Plaintiff's first cause of action is for defamation, which is expressly excluded from CPLR 302(a)(3).  *Paige v.*

*Digital Business Networks Alliance, Inc.*, No. 24-CV-3169, 2025 WL 753952, at *12 (S.D.N.Y. Mar. 10, 2025) (citing cases and observing, "[a]s noted in the text of the statute, Sections 302(a)(2) and 302(a)(3) do not provide a basis for personal jurisdiction on a claim for defamation").  To the extent that Plaintiff's other claims may be actionable, CPLR 302(a)(3)(i) does not apply because, again, there is no evidence or allegation before the Court that Defendant or his firm "regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered" in New York.

CPLR 302(a)(3)(ii) also does not apply.  To establish personal jurisdiction under that provision, "a plaintiff must satisfy five elements: (1) the defendant's tortious act was committed outside New York; (2) the cause of action arose from that act; (3) the tortious act caused an injury to a person or property in New York; (4) the defendant expected or should reasonably have expected that his or her action would have consequences in New York; and (5) the defendant derives substantial revenue from interstate or international commerce." *Penguin Group (USA), Inc. v. American Buddha*, No. 09-CV-528, 2013 WL 865486, at *4 (S.D.N.Y. Mar. 7, 2013) (internal quotation marks omitted) (quoting *American Buddha I*, 609 F.3d at 35).

As explained above, the first two elements are satisfied.  The third, fourth, and fifth elements, however, are not.  Plaintiff claims to have suffered economic and reputational harm and emotional distress as a result of Defendant's conduct in the Massachusetts bankruptcy proceedings.  (Dkt. 2-1 ¶¶ 13-14.)  He even appears to have solicited a one-page "To Whom It May Concern" letter from a company named Tech Synergy opining that Plaintiff lost revenue and referrals due to "reputational harm arising from the public

dissemination of sealed and non-public information." (Dkt. 23-7 at ECF 79.) But the fact

that Plaintiff resides in New York does not mean that Defendant's conduct in

Massachusetts caused injury to Plaintiff in New York under § 302(a)(3)(ii). As the Second

Circuit has explained, "[i]t is well-settled[,] … that 'residence or domicile of the injured

party within [New York] is not a sufficient predicate for jurisdiction' under section

302(a)(3)[;]" and, "[t]he suffering of economic damages in New York is insufficient, alone,

to establish a direct injury in New York for [CPLR] 302(a)(3) purposes." *Troma*

*Entertainment, Inc. v. Centennial Pictures Inc.*, 729 F.3d 215, 218 (2d Cir. 2013) (internal

quotation marks and citations omitted).

Instead, to determine whether an injury occurred within the state:

> [T]he Court must apply the "situs-of-injury test." *DiStefano v.
> Carozzi North America, Inc.*, 286 F.3d 81, 84 (2d Cir. 2001)
> (quoting *Bank Brussels Lambert v. Fiddler Gonzalez &
> Rodriguez*, 171 F.3d 779, 791 (2d Cir. 1999)). Under the
> "situs-of-injury test," the relevant location under section
> 302(a)(3) is the location of the "original event which caused
> the injury." *Id*. (quoting *Bank Brussels Lambert*, 171 F.3d at
> 791). "This 'original event' is, however, generally
> distinguished not only from the initial tort but from the final
> economic injury and the felt consequences of the tort." *Id*.
> (quoting *Bank Brussels Lambert*, 171 F.3d at 791).

*Yurasov-Lichtenberg v. Betz*, No. 15-CV-1430, 2016 WL 4544031, at *6 (E.D.N.Y. Aug.

30, 2016); *accord Timothy Coffey Nursery Landscape Inc. v. Soave*, 760 F. App'x 58, 61

(2d Cir. 2019) (summary order) (specifying that the "situs of the injury is the location of

the original event which caused the injury, not the location where the resultant damages

are felt by the plaintiff") (quoting *Whitaker v. American Telecasting, Inc.*, 261 F.3d 196,

209 (2d Cir. 2001)). "The key question in this analysis is the timing and location of the

initial injury, as distinct both from the tortious act itself and from the damages suffered

later[.]" *Doe v. Delaware State Police*, 939 F. Supp.2d 313, 327 (S.D.N.Y. 2013).  Here, the "original event" from which Plaintiff claims injury is public disclosure of information from the DHR Complaint in the Massachusetts bankruptcy proceedings.  The situs-of-injury is Massachusetts, not New York.  Plaintiff thus has not satisfied the third requisite element to obtain personal jurisdiction under § 302(a)(3)(ii).

The fourth element also is not present.  Although Defendant represents the Massachusetts debtor in a bankruptcy action adversely to Plaintiff, the adversary proceeding was filed by Plaintiff in Massachusetts and remains pending there.  Defendant reasonably should have expected that his involvement in that proceeding would have consequences in Massachusetts; but no reasonable person could conclude that he reasonably should have expected that it would have consequences in New York.

"The mere likelihood or foreseeability that a defendant's product will find its way into New York is alone insufficient to satisfy § 302(a)(3)(ii).  Foreseeability must be coupled with evidence of a purposeful New York affiliation, for example, a discernible effort to directly or indirectly serve the New York market." *Energy Brands Inc. v. Spiritual Brands, Inc.*, 571 F. Supp.2d 458, 468 (S.D.N.Y. 2008) (internal quotation marks omitted).  "Plaintiff has offered no evidence that [Defendant] purposefully availed [himself] of the benefits of the laws of New York State." *Lipson v. Birch*, 46 F. Supp.3d 206, 219 (E.D.N.Y. 2014).  For instance, Plaintiff points "to no actions or meetings that took place in New York" or any "property, bank accounts, offices, or employees [of Defendant] located within the state's boundaries." *Id.* (finding no § 302(a)(3)(ii) personal jurisdiction over Pennsylvania attorneys in action brought by New York plaintiff claiming he entered into retainer agreement with the attorneys and that they committed fraud and negligence).

Plaintiff thus has not met his burden to establish a prima facie case that the fourth required element of § 302(a)(3)(ii) is satisfied.

Nor has he done so with respect to the fifth element. There is no allegation or evidence before the Court that Defendant or his firm derive any, let alone substantial, revenue from interstate or international commerce.

In sum, the Court concludes that it does not have personal jurisdiction over Defendant under any provision of New York's long-arm statute. Accordingly, the Court cannot exercise personal jurisdiction over the Defendant, and the case should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(2).[6]

## Conclusion

For the foregoing reasons, (1) Plaintiff's motion to remand is DENIED; (2) Plaintiff's motion to proceed under a pseudonym is DENIED; and (3) Defendants' motion to dismiss should be GRANTED. To the extent not discussed above, the Court has considered Plaintiff's arguments and finds them to be either moot or without merit. The Clerk of Court is respectfully directed to (1) revise the caption and plaintiff's name on ECF to reflect Plaintiff's actual identity (*see* Dkt. 19 ¶ 1), and (2) terminate the motions at Dkts. 7 and 18.

---

[6] "Because this Court has determined there is no statutory basis for the Court to assert personal jurisdiction over [Defendant], it is not necessary to consider whether assertion of personal jurisdiction over this defendant would violate the Due Process Clause of the Fourteenth Amendment." *Croskey v. Medical and Technical Services, Inc.*, No. 05-CV-6641, 2006 WL 2347816, at *5 (S.D.N.Y. Aug. 10, 2006) (citing *Ball v. Metallurgie Hoboken-Overpelt, S.A.*, 902 F.2d 194, 198 (2d Cir.1990)).

**Deadline For Filing Objections And Preserving Appeal**

Pursuant to 28 U.S.C. § 636(b)(1) and Rules 72, 6(a), and 6(d) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days to file written objections to this Report and Recommendation.  Any party shall have fourteen (14) days to file a written response to the other party's objections.  Any such objections and responses shall be filed with the Clerk of the Court, with courtesy copies delivered to the Chambers of the Honorable Jennifer H. Rearden, United States Courthouse, 500 Pearl Street, New York, New York 10007, and to the Chambers of the undersigned, at United States Courthouse, 500 Pearl Street, New York, New York 10007.  Any request for an extension of time for filing objections must be addressed to Judge Rearden.  **Failure to file timely objections will result in a waiver of the right to object and will preclude appellate review.**

Respectfully submitted,

_____
ROBERT W. LEHRBURGER
UNITED STATES MAGISTRATE JUDGE

Dated: December 1, 2025
       New York, New York

Copies transmitted this date to Plaintiffs and all counsel of record by electronic ECF service.